WRIGHT, L'ESTRANGE & ERGASTOLO
Joseph T. Ergastolo (SBN 137807)
jte@wlelaw.com
Andrew E. Schouten (SBN 263684)
aschouten@wlelaw.com
402 West Broadway, Suite 1800
San Diego, California 92101
(619) 231-4844; Fax: (619) 231-6710

FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER LLP
L. Scott Burwell (*Counsel Pro Hac Vice*)
scott.burwell@finnegan.com
J. Derek McCorquindale (*Counsel Pro Hac Vice*)
derek.mccorquindale@finnegan.com
Two Freedom Square, 11955 Freedom Drive
Reston, Virginia 20190-5675
(571) 203-2700; Fax: (202) 408-4400

FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER LLP
Laura P. Masurovsky (*Counsel Pro Hac Vice*)
laura.masurovsky@finnegan.com
901 New York Avenue, NW
Washington, DC 20001-4413
(202) 408-4043; Fax: (202) 408-4400

FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER LLP
Jeffrey M. Jacobstein (*Counsel Pro Hac Vice*)
jeffrey.jacobstein@finnegan.com
Two Seaport Lane
Boston, Massachusetts 02210-2001
(617) 646-1664; Fax: (617) 646-1666

Attorneys for Defendant Eli Lilly and Company

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENENTECH, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>ELI LILLY AND COMPANY, an Indiana corporation,<br><br>Defendant. | Case No.: 18-cv-1518 JLS (JLB)<br><br>**ELI LILLY AND COMPANY'S OPPOSITION TO PLAINTIFF'S *EX PARTE* MOTION FOR LEAVE TO SEEK EXPEDITED VENUE DISCOVERY AND EXTEND TIME TO RESPOND TO LILLY'S MOTION** |

Case No. 18-cv-1518 JLS (JLB)

Defendant Eli Lilly and Company ("Lilly") hereby opposes Genentech Inc.'s ("Genentech") *ex parte* motion for venue discovery and to extend the stipulated schedule (ECF No. 34 ("*Ex Parte* Motion")). The request should be denied for at least the following reasons:

(1) Venue discovery will not be helpful given that Lilly's Rule 12(b)(3) motion to dismiss for lack of venue *rests on a pure legal question for which no relevant facts are credibly in dispute*, even after Genentech submitted its Amended and Supplemental Complaint. On the face of the pleadings and sworn declarations—*and considering the July 3, 2018, issuance date of the patent-in-suit*—the Court can decide venue as a matter of law, without premature, costly, and unnecessary fact discovery (*See infra* § 1).

(2) Venue discovery is a delay tactic. When Lilly filed its first Rule 12(b)(3) motion demonstrating that this was not the proper venue (ECF No. 24), Genentech could have sought such discovery from the Court, but did not. Genentech, instead of responding, reached out to Lilly with a request, which Lilly entertained in an effort to expedite matters. The parties negotiated an agreement presented to the Court: Genentech would add venue allegations and dozens of pages of new exhibits in an Amended and Supplemental Complaint; Lilly would refile its Rule 12 motions by November 13; Genentech would file its opposition by December 4; and a new hearing date would be scheduled for after December 11, 2018 (ECF No. 27 (Oct. 16, 2018)). The Court entered the stipulated schedule (ECF No. 28). Notwithstanding that Genentech in the abstract "reserved the right to seek discovery on venue" (ECF No. 27, ¶ 7), it did nothing for more than four weeks, content to allow the schedule to proceed apace. When Genentech was faced with its second deadline to respond to Lilly's Rule 12 motion, however, it filed this motion. Genentech again attempts at the last minute to avoid any substantive answer to the pure legal issues raised. The procedures established by court order should go forward (ECF No. 28), including the scheduled hearing on January 10, 2019 (*See infra* § 2).

Genentech controlled where and when it brought this action—including doubling-down with an amended and supplemented complaint in an improper forum where neither party is resident. Genentech's admission that it chose this forum "because it is neutral and more convenient" is legally deficient based on controlling patent law (*Ex Parte* Mot. 6). It cannot now be relieved of a plaintiff's threshold obligation to have sufficiently investigated, pleaded, and established proper patent venue without first obtaining discovery. *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1013-15 (Fed. Cir. 2018) ("Plaintiff bears the burden of establishing proper venue"). The *Ex Parte* Motion is an attempt to paper-over Genentech's own deficient pleadings, by seeking overbroad and irrelevant venue discovery.

Genentech's motion purports to list Lilly's "substantial ties to this district" (*Ex Parte* Mot., 1-2), but fails to consider that the venue analysis is more nuanced under 28 U.S.C. § 1400(b). *See In re Cray*, 871 F.3d 1355, 1361 (Fed. Cir, 2017) ("in applying the statute," plaintiffs must "be careful not to conflate showings that may be sufficient for other purposes, *e.g.*, personal jurisdiction or the general venue statute, with the necessary showing to establish proper venue in patent cases"). By careful design, § 1400(b) "narrows jurisdiction relative to the courts that previously allowed patent suits wherever the defendant could be served." *Id.* (citation omitted). The legal issue Lilly raises in its Rule 12(b)(3) motions is ripe, and turns on just a few, uncontroverted facts.

**1. <u>The Threshold Venue Question Rests on a Pure Issue of Law for which No Relevant Facts Are Disputed</u>**

    **a)** *TC Heartland and the Pure Issue of Law Created*

Recently, the Supreme Court in *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514, 1518 (2017), reaffirmed that § 1400(b) alone governs venue for patent suits. This means that infringement actions cannot be indiscriminately filed in any federal court, only to have venue assessed later based on subsequent discovery—that must be done with a well-pleaded complaint up front.

*Hoover Grp., Inc. v. Custom Metalcraft, Inc.*, 84 F.3d 1408, 1410 (Fed. Cir. 1996) ("Venue is based on the facts alleged in the well-pleaded complaint."). Section 1400(b) mandates that for all non-resident defendants, they must be shown to have "committed acts of infringement" and maintained a "regular and established place of business" within the district to satisfy the statute. 28 U.S.C. § 1400(b).

As Lilly has explained in its successive Rule 12(b)(3) motions (ECF No. 24-1, § I; ECF No. 30-1, Ex. A, § I.C.4), the plain text of the statute at issue conjoins the two venue requirements by placing them side-by-side in a single phrase. Moreover, the legislative history notes that the requirements must "concur." 29 Cong. Rec. 1901 (1897). The *Cray* court's similar insight is notable, derived from its own assessment of the legislative history. 871 F.3d at 1360-61. The intent underlying enactment of § 1400(b)'s predecessor, the Federal Circuit found, was to be able "to sue [defendants] when they are *infringing in a business established* near the plaintiff or owner of a patent." *Id.* (emphasis added) (quoting 29 Cong. Rec. 2719 (1897) (statement of Sen. Platt)). In order to give proper effect to Congress's language and legislative intent in § 1400(b), various courts have required showing that the alleged "committed acts of infringement" occur in the "established place of business" for patent venue to pertain. *E.g.*, *Scaramucci v. FMC Corp.*, 258 F.Supp. 598, 600 (W.D. Okla. 1966); *Jeffrey Galion, Inc. v. Joy Mfg. Co.*, 323 F.Supp. 261, 263 (N.D. W. Va. 1971). The existence *vel non* of this "nexus" requirement thus presents a pure issue of law[1] (*See generally* ECF No. 30-1, § I.C.4).

---

[1] While some district courts—in the absence of direct Federal Circuit authority either way—have not enforced such a requirement, they candidly acknowledge this issue remains an unanswered legal question. *See, e.g.*, *Raytheon Co. v. Cray, Inc.*, 258 F.Supp.3d 781, 791 (E.D. Tex. 2017) ("*Tyler* also leaves unanswered whether the patent venue statute requires a defendant's 'acts of infringement' to be related to the defendant's regular and established place of business. The Federal Circuit has also never addressed this question."); *Bristol-Myers Squibb Co. v. Mylan Pharm., Inc.*, No. 17-379-LPS, 2017 U.S. Dist. LEXIS 146372, at *51 (D. Del. Sept. 11, 2017) ("The Federal Circuit has yet to address explicitly whether those requirements must be connected, such that a defendant's regular and established place of business within a district results in or gives rise to its infringing acts. Courts that have considered the question have reached differing results."). Indeed, both times the Federal Circuit has commented on nexus, it was in the context of a *denied mandamus petition*, and neither reached the "ultimate merits conclusion" because the high threshold for relief

### b) *Only Undisputed Facts Are Pertinent to the Purely Legal Question Lilly Raises.*

In this case, the relevant facts needed to resolve Lilly's Rule 12(b)(3) motion on the legal question of "nexus" are all before the Court. Tellingly, Genentech never identifies which facts it actually disputes, but instead posits a vague desire to "test the veracity" of facts it has admitted or provided no reason to doubt. Each of the following is undisputed:

- Lilly is incorporated in Indiana, thus venue is not proper in this District under the "resides" prong of § 1400(b) (*See* ECF No. 29 (Amended and Supplemental Complaint), ¶2; ECF No. 30-1, 2, 6; ECF No. 30-4 ("Glaesner Decl."), ¶ 4).

- Taltz® was approved by the FDA and has been sold in the United States as of 2016, more than two years before Genentech's patent-in-suit issued (ECF No. 29, ¶ 24; ECF No. 30-1, 2; ECF No. 30-3 ("Hale Decl."), ¶ 4; Glaesner Decl., ¶ 9; *Ex Parte* Mot., 2).

- The LBC is the sole location alleged as Lilly's "regular and established place of business" in this District by Genentech (*See* ECF No. 29, ¶¶ 7-16; *Ex Parte* Mot. 3-4). The LBC is a research and development facility located in San Diego, California (ECF No. 30-1, 1-3; Glaesner Decl., ¶¶ 6-8; *Ex Parte* Mot., 3-4).

- The asserted patent, U.S. Patent No. 10,011,654, *issued on July 3, 2018* (ECF No. 29, ¶¶ 5, 18). As a matter of law, therefore, *all* the activities that Genentech alleges occurred in the LBC before July 3, 2018 (*id.*, ¶¶ 9-14 (detailing only statements and events from 2004 to 2017)), did not occur "during the term of the patent," 35 U.S.C. § 271(a), and are irrelevant to satisfy the patent venue requirements. *Cf. NexLearn v. Allen Interactions, Inc.*, 859

---

by extraordinary writ was not met. *In re Google LLC*, No. 2018-152, D.I. 39-1 at 6-7 (Fed. Cir. Oct. 29, 2018); *In re Cordis Corp.*, 769 F.2d 733, 737 (Fed. Cir. 1985).

F.3d 1371, 1376-77 (Fed. Cir. 2017) ("[P]re-issuance . . . [documents] predating August 5, 2014 cannot constitute infringing acts giving rise to NexLearn's claim because they did not occur 'during the term of the patent.'") (citations omitted)).  As this Court has previously recognized, any venue discovery not expressly limited to post-patent issuance activities is improper. *See Yardstash Sol., LLC v. Marketfleet, Inc.*, No. 17-CV-625-JLS, 2017 U.S. Dist. LEXIS 177871, *4 (Oct. 26, 2017) ("Plaintiff is not entitled to venue discovery before the claims accrued.").[2]

- Lilly's Chief Science Officer at the LBC confirmed that "when the LBC opened in 2009, Taltz® was already in development in Indiana." (Glaesner Decl., ¶¶ 10-11 ("I am not aware of any research and development of Taltz® presently ongoing in the LBC, nor at the time this suit was filed on July 2, 2018.")).[3] Lilly employees have similarly declared that no commercialization activities or clinical trials for Taltz® occur in the LBC (ECF No. 30-1, § I.D; Glaesner Decl., ¶¶ 11-14; Hale Decl., ¶¶ 5-9).  Genentech has not disputed this in its Amended and Supplemental Complaint or exhibits (*See generally* ECF No. 29, ¶¶ 1-43; Exs. 1, 10 (never identifying the LBC)).

Apart from all the above undisputed facts, at no point in its Amended and Supplemental Complaint does Genentech ever allege that any other "acts of infringement" occur *in* the LBC (*See generally* ECF No. 29, ¶¶ 7-15).  Rather, all allegations of ongoing commercialization or regulatory efforts—such as "promoting and marketing the use of, offering for sale, and selling Taltz" or "ongoing clinical

---

[2] The vast majority of Genentech's overbroad and irrelevant discovery requests (*i.e.*, ECF No. 34, Ex. 2 (Interrogatories), Nos. 1, 2, 3, 4, 5, 6, 7, and 8; Ex. 3 (Requests for Production) Nos. 1, 2, 3, 4, 5, and 6; Ex. 4 (Requests for Admission) Nos. 5, 6, 8, and 9; Ex. 5 (Rule 30(b)(6) Deposition Topics) Nos. 1, 2, 3, 4, 5, and 6) encompass overbroad and vague matter as to timing, and seek information prior to the relevant date for the motion at issue.

[3] Genentech does not dispute his sworn statements, nor does it "explain what new facts additional discovery would unearth" by deposition. *Olivia Garden, Inc. v. Stance Beauty Labs, LLC*, No. 17-CV-05778-HSG, 2018 WL 3392063, at *3 (N.D. Cal. July 12, 2018) (denying venue discovery). Indeed, Genentech's Amended and Supplemental Complaint never disputed Dr. Glaesner's declaration, already part of the record when it undertook to modify its pleadings.

trials"—are cast more generally by Genentech as "in this district," and not at the LBC specifically[4] (*See* ECF 29, ¶¶ 7-8, 15-16; *see also id*., Exs. 1, 10).

In sum, as they pertain to the threshold legal question twice raised by Lilly—*i.e.*, whether as a pure matter of law the requirements of § 1400(b) demand a nexus—no relevant facts are credibly disputed. Genentech seems, at bottom, to agree that "Lilly disputes that this district is the proper venue by arguing that the LBC is unrelated to its infringing activities," which is precisely the legal contention raised, but not a *factual* dispute (*Ex Parte* Mot. 3). None of Genentech's venue discovery requests are helpful or necessary, therefore, and Genentech's motion for discovery should be denied.[5]

### c)  *Irrelevant and Overbroad Discovery Is Not Proper*

The requested venue discovery amounts to nothing more than a prohibited "fishing expedition"—premature, irrelevant, and wildly overbroad (*See supra* nn.2-4). For example, Interrogatory No. 1 seeks information from before 2005—more than a decade prior to the date relevant for venue here: "Describe the invention, creation, generation, development, design, or engineering of ixekizumab . . . ." But *venue* discovery cannot possibly reach back that far, because § 1400(b) should be analyzed based on facts existent on the date the suit is filed.

As a further example of unrestrained discovery requests, Genentech itself admits that:

> Interrogatory No. 7 seeks:
> - The number of physicians prescribing Taltz;
> - The number of patients prescribed Taltz;
> - The number of Taltz prescriptions filled;

---

[4] Because the LBC is indisputably the only Lilly "regular and established place of business" identified for purposes of § 1400(b), the vast majority of the Genentech discovery requests (ECF No. 34, Ex. 2 (Interrogatories), Nos. 1, 2, 4, 5, 7, and 8; Ex. 3 (Requests for Production) Nos. 1, 2, 3, 5, and 6; Ex. 4 (Requests for Admission) Nos. 1, 2, 3, 4, 5, 6, and 7; Ex. 5 (Rule 30(b)(6) Deposition Topics) Nos. 1, 2, 3, 5, and 6) encompass overbroad and vague matter as to location, seeking information beyond the LBC that is irrelevant to the limited legal question at issue here.

[5] Lilly reserves the right to further object, generally and specifically, to all these discovery requests if necessary.

- The number of physicians to which Lilly or an authorized third party details, markets, or otherwise promotes the use of Taltz;
- The number of Taltz sales representatives;
- Lilly's Taltz marketing, promotional, and advertising expenditures;
- Revenue and profit derived from selling Taltz; and
- Payments to physicians and other healthcare providers in connection to Taltz.

> This interrogatory and other discovery requests *seek information relating to the State of California, which is relevant to the transfer factors, and the United States as a whole*, which provides a basis for comparison for the activity in this district and the state.

(*Ex Parte* Mot., 5 (emphasis added)).  Such overbroad *venue* discovery demands—untethered from the specific question at hand (Lilly does not dispute that physicians in California and every other State prescribe this pharmaceutical treatment as of commercial launch in 2016, as Genentech recognizes (*see Ex Parte* Mot., 2 (citing Hale Decl., ¶ 4; Glaesner Decl., ¶ 9))—demonstrate that Genentech's motion here overreaches and obfuscates the real venue issue (Similarly objectionable requests are identified *supra* nn. 2, 4).

No discovery is needed for this Court to decide the discrete and dispositive *legal issue* Lilly has raised in its Rule 12(b)(3) motions.  This Court and others have denied expedited discovery requests and granted transfer, where "Plaintiff put[] forward no reason why its discovery request will cure the legal flaws in its argument," and that applies here.  *See Palomar Techs., Inc. v. MRSI Sys., LLC*, No. 15-CV-1484, slip op. at 14 (S.D. Cal. Feb. 5, 2018); *see also Kaia Foods, Inc. v. Bellafiore*, 70 F.Supp.3d 1178, 1183–84, 1187 (N.D. Cal. 2014) (plaintiff offered "nothing in its briefs or at oral argument that leads the Court to believe that venue discovery will change the result on this issue").  There is no plausible additional venue discovery to address the deficiencies in Plaintiff's complaints—Genentech stills fails, even after amending and supplementing, to allege cognizable "acts of infringement" in the LBC (*See generally* ECF No. 29, ¶¶ 7-16).

///

### d) *In the Alternative, Lilly's Proffered Answers*

Although Lilly has provided unrebutted, sworn statements of record (*see* Glaesner Decl., ¶¶ 1-16; Hale Decl., ¶¶ 1-11), if the Court deems any discovery is appropriate, Lilly respectfully submits that it be limited to a few brief responses to the questions below, narrowly tailored to the venue question presented. This will put to rest any concerns of Genentech not being able to "test the veracity" of the current declarants, even though it has not come forward with any grounds whatsoever to disbelieve or dispute Wolfgang Glaesner or Nancy Hale's testimony (*See Ex Parte* Mot., 4). Responses, if the Court orders them, will be in lieu of Genentech's requested discovery, and can be delivered by Tuesday, November 27, 2018:

a) Is research and development of Taltz® currently being conducted at the LBC, or was it as of July 2, 2018, and October 17, 2018, when Genentech filed Original and Amended and Supplemental Complaints in this matter?

b) Are clinical trials for Taltz® currently being conducted at the LBC, or were they as of July 2, 2018, and October 17, 2018, when Genentech filed Original and Amended and Supplemental Complaints in this matter?

c) Are operations commercializing Taltz®, including offering for sale, selling, marketing, manufacturing, supplying, and distributing the Taltz® product, currently being directed from or occurring in the LBC, or were they as of July 2, 2018, and October 17, 2018, when Genentech filed Original and Amended and Supplemental Complaints in this matter?

Accordingly, upon ordering and submitting such answers by November 27, 2018, Lilly respectfully requests that the Court proceed on the schedule already stipulated to and ordered on the docket (*See* ECF 28; *see infra* § 2). Genentech would still have more than a week to update its responsive paper with the Lilly answers, as needed

(*Id.*). Keeping the schedule previously set, the Court will have before it all arguments and facts necessary to decide the legal issue presented.

## 2. Procedure Should Not Change

By only seeking venue discovery now, Genentech is much too late. (*Compare* ECF No. 1 (July 2, 2018), *with* ECF No. 34 (November 16, 2018)). That includes foregoing the opportunity during an intervening "do-over" of its venue allegations. (*See* ECF No. 29 (Oct. 17, 2018)). Genentech proclaims that it "reserved the right" to eventually seek venue discovery when it sought leave to supplement its complaint (ECF No. 34-4, 2 (citing ECF No. 27, ¶ 7)), but that is a far cry from actually doing so. In fact, Genentech agreed to file responsive papers by December 4, 2018, permitting this Court to hear the threshold issue of venue on January 10, 2019—more than six months after this case was filed. Genentech's *Ex Parte* Motion, however, seeks even more time by an ill-defined expansion of the schedule for discovery. It should be denied in favor of honoring the order entered by the Court, based on the parties' agreement. (ECF No. 28.)

This action was commenced on July 2, 2018 (ECF No. 1). After Lilly timely filed its first Rule 12(b)(3) motion to dismiss for lack of venue in September 2018, exposing dispositive venue flaws (ECF No. 24, § I), Genentech could have sought discovery from the Court at that time. It did not. Instead, with full knowledge of Lilly's substantive legal positions, Genentech chose to amend and supplement, reworking its venue allegations in the Complaint and adding dozens of pages of exhibits (*Id.*; *see also id.*, Exs. 1, 10.).

In order to obtain leave to supplement its pleadings, Genentech sought Lilly's agreement in creating a schedule going forward, including setting dates for all responses and replies. Lilly agreed to an amended schedule in an effort to facilitate matters, and the Court entered the following on October 17, 2018:

/ / /

/ / /

> As stipulated by the parties:
>
> - Plaintiff will file the amended complaint attached to the Motion as Exhibit 1 upon issuance of this Order.
> - Defendant will file its motion to dismiss or strike Genentech's Amended and Supplemental Complaint <u>on or before November 13, 2018</u>. Defendant will confirm a hearing date with the Court on the day the motion is filed [now scheduled for January 10, 2019].
> - Plaintiff will file its opposition <u>on or before December 4, 2018</u>.
> - Defendant will file its Reply <u>on or before December 11, 2018</u>.
>
> **IT IS SO ORDERED.**

(ECF No. 28 (all emphasis original)). This order does not contemplate Genentech's proposed wide-open venue discovery it now wants, and Genentech has not shown good cause to obtain it. Rather, as agreed, *id.*, Genentech submitted its Amended and Supplemental Complaint, and so, as agreed, *id.*, Lilly expended resources to file the same legal challenge to venue in a *second* Rule 12(b)(3) motion, filed November 13, 2018 (*Compare* ECF Nos. 30-1, *with* ECF Nos. 24-1). Last Friday afternoon, November 16, 2018, however, Genentech announced it was, in fact, moving *ex parte* for venue discovery that very night (*See* ECF No. 34-4, 1-2).

Rather than responding to the Rule 12 motion as ordered by December 4, 2018, Genentech seeks an improper modification to the schedule, again prolonging resolution of Lilly's threshold venue challenge on the law. Genentech's unreasonable delay—asking for an additional extension on an issue for which it bore the burden to well-plead from the beginning—is "contrary to the just, speedy, and inexpensive determination of the merits of the action." *See* Fed. R. Civ. P. 1; *In re ZTE*, 890 F.3d at 1013-15; *Hoover Grp.*, 84 F.3d at 1410. Ostensibly, if its motion is successful, Genentech will seek to supplement the Complaint further, launching a whole new round of pleadings and responses. This gambit should not be countenanced and Genentech should be required to maintain the schedule the Court entered (ECF No. 28). Inasmuch as Genentech has known Lilly's legal arguments since September

2018, and has the benefit of multiple declarations on relevant facts, it could well have begun preparing its responsive paper in a timely fashion. Genentech is still clearly able to respond in the two weeks that remain before December 4, 2018 (*Id.*).

### 3. Lilly's Motion Is Brought Under § 1406, Not § 1404

Genentech misunderstands the nature of the further analysis directed to the Southern District of Indiana in Lilly's Rule 12(b)(3) motion (*See* ECF No. 30-1, § I.E). Lilly has never suggested that "*even if venue is proper here*, the relevant factors weigh in favor of transfer to Lilly's home forum . . . ." (*Ex Parte* Mot., 1; *see also id*. at 2 ("*alternatively*, that the case should be transferred to the Southern District of Indiana" (emphases added)). Lilly does not concede that venue is proper, such that a § 1404(a) forum *non conveniens* motion is necessary or appropriate at this point. Lilly's venue challenge *sub judice* is brought exclusively under § 1406, seeking dismissal for *improper* venue. That is procedurally distinct from a motion to transfer from an inconvenient albeit proper forum. Transferor courts frequently borrow the factors from the § 1404 context in order to, in the interests of justice, determine where to send a case when the plaintiff erred in laying venue under § 1406 (if venue is deemed improper, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought").

Lilly respectfully submits that the Court can simply do here as it did in *Palomar*, and assign the case to the Southern District of Indiana because "Defendant is incorporated in [Indiana], its principal place of business is in [Indiana], and thus venue would be proper there under 28 U.S.C. § 1400(b) and *TC Heartland*." No. 15-CV-1484, slip op. at 15. No discovery is needed to "transfer" to Indiana based on these undisputed corporate facts (*See* ECF No. 29, ¶2; ECF No. 30-1, 2, 6; Glaesner Decl., ¶ 4; *see contra Ex Parte* Mot. 5 (attempting to justify overbroad discovery requests as seeking "information relating to the State of California, *which is relevant to the transfer factors*, and the United States as a whole, which provides a basis for

comparison") (emphasis added)).  Indeed, Genentech has provided no other option if the Court determines that transfer over dismissal is warranted here under § 1406.

### 4. Conclusion

For the reasons stated above, the Court should deny Genentech's *Ex Parte* Motion for venue discovery, and maintain the present schedule (ECF No. 28).

Respectfully submitted,

WRIGHT, L'ESTRANGE & ERGASTOLO
and
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER LLP

Attorneys for Eli Lilly and Company

Dated: November 21, 2018    By:   /s/ *Joseph T. Ergastolo*
                                            Joseph T. Ergastolo
                                            jte@wlelaw.com