UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENENTECH, INC.,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>ELI LILLY AND COMPANY,<br><br>　　　　　　　　　　Defendant. | Case No.: 18-cv-01518-JLS (JLB)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART GENENTECH'S MOTION REGARDING PROPER SCOPE OF VENUE DISCOVERY**<br><br>**[ECF No. 42]** |

Presently before the Court is a motion regarding proper scope of venue discovery filed by plaintiff Genentech, Inc. ("Genentech"), which seeks to compel further discovery responses related to venue. (ECF No. 42.) Defendant Eli Lilly and Company ("Lilly") opposes. (ECF No. 43.) For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Genentech's motion to compel further responses related to venue.

## I.　BACKGROUND

On July 2, 2018, Genentech filed a complaint alleging patent infringement against Lilly. (ECF No. 1.) On October 17, 2018, Genentech filed an amended and supplemental complaint ("FAC") against Lilly. (ECF No. 29.) In its FAC, Genentech alleges that Lilly is infringing its U.S. Patent No. 10,011,654 ("the '654 patent'") by manufacturing, using,

importing, and/or offering for sale Taltz, a prescription medicine containing ixekizumab as its active ingredient. (*Id.* at ¶¶ 3, 26-43.)

On November 13, 2018, Lilly filed a motion to dismiss the FAC under Federal Rule of Civil Procedure 12(b)(3) for improper venue or, in the alternative, to transfer the case to the United States District Court for the Southern District of Indiana pursuant to 28 U.S.C. § 1406. (ECF No. 30.) The motion was made on grounds that this Court "is not the proper venue for [Genentech's] patent infringement suit under 28 U.S.C. section 1400 and *TC Heartland LLC v. Kraft Food Group Brands LLC*, 137 S. Ct. 1514, 1518 (2017)." (*Id.* at 2.) Lilly specifically argues:

> The Supreme Court in *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514, 1518 (2017), reaffirmed that 28 U.S.C. § 1400(b) alone governs venue for infringement suits. Venue is improper here because Genentech cannot establish that Lilly (1) "resides," or (2) has "committed acts of infringement" *and* maintains a "regular and established place of business" within this District to satisfy the patent venue statute. 28 U.S.C. § 1400(b). In response to this Rule 12(b)(3) challenge, Genentech bears the burden of establishing venue is proper. *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1013-15 (Fed. Cir. 2018). It cannot.
>
> Lilly does not deny having a facility in San Diego, California, called the Lilly Biotechnology Center ("LBC"), dedicated solely to research and development. Genentech relies exclusively on the LBC in pleading venue, but fails to adequately identify any legally cognizable "act[] of infringement" to satisfy § 1400(b). Because Genentech is suing on its U.S. Patent No. 10,011,654 ("the '654 patent")—issued on July 3, 2018, more ***than two years after*** Lilly's Taltz® (ixekizumab) was approved by the FDA and marketed in the United States—prior research and development cannot be considered an "act[] of infringement" sufficient for § 1400(b). For *venue* purposes, Genentech was obligated to plead something more than alleged past research and development activities at the LBC from before the patent-in-suit existed, yet even when this deficiency was exposed by Lilly, Genentech could not establish venue in its amended and supplemented pleadings.
>
> Moreover, threadbare, conclusory allegations elsewhere in the Complaint that Lilly is promoting and marketing the use of, offering for sale, and selling Taltz® in this District (*e.g.*, ECF No. 29, ¶ 7) are inapplicable to venue, because these acts are ***not*** performed in the LBC, which is a research and development facility. To effectuate the language and intent of § 1400(b),

courts have required showing that the alleged "committed acts of infringement" occur at the "established place of business" for patent venue, which Genentech cannot show here. *E.g., Scaramucci v. FMC Corp.*, 258 F. Supp. 598, 600 (W.D. Okla. 1966); *Jeffrey Galion, Inc. v. Joy Mfg. Co.*, 323 F. Supp. 261, 263 (N.D. W. Va. 1971).

(ECF No. 30-1 at 9-10 (emphasis in original).)

On November 16, 2018, Genentech filed an *ex parte* motion for leave to seek expedited venue discovery. (ECF No. 34.) On November 30, 2018, the Honorable Janis L. Sammartino granted Genentech's *ex parte* motion for expedited venue discovery, stating:

> In its Motion to Dismiss, Defendant argues venue is improper in this district, asserting that its alleged infringing activities in this district are insufficient to establish venue. *See generally* Mot. Plaintiff requests leave to conduct discovery regarding venue before filing its Opposition to Defendant's Motion. *See generally* Mot. for Discovery. The Court finds that discovery may be useful in this matter, and therefore permits discovery on this issue. *See Hayashi v. Red Wing Peat Corp.*, 396 F.2d 13, 14 (9th Cir. 1968) (holding a trial court should permit discovery on a motion to dismiss for improper venue where discovery may be useful in resolving issues of fact presented by the motion). The Court refers the Motion to Magistrate Judge Burkhardt to determine proper scope of the venue discovery.

(ECF No. 39.)

On December 6, 2018, the parties left a joint voicemail with Judge Burkhardt's chambers and informed the Court that there were no outstanding discovery disputes related to venue discovery at that time and they did not need the Court's assistance regarding Judge Sammartino's order. (*See* ECF No. 40.) On January 30, 2019, the parties contacted Judge Burkhardt's chambers again and this time requested the Court's assistance to resolve a discovery dispute related to venue discovery. (ECF No. 41.) The Court set a briefing schedule. (*Id.*)

On February 6, 2019, Genentech filed a motion regarding proper scope of venue discovery. (ECF No. 42.) Thereafter, Lilly filed an opposition and Genentech filed a reply. (*See* ECF Nos. 43, 44.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 26(d) states:

> A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order.

Fed. R. Civ. P. 26(d)(1).

In this Circuit, courts must find "good cause" to determine whether to permit discovery before the Rule 26(f) conference. *See Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002); *U.S. v. Distribuidora Batiz CGH, S.A. De C.V.,* No. 07-cv-370-WQH-JMA, 2009 WL 2487971, at *10 (S.D. Cal. Aug. 10, 2009). Good cause exists where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party. *See, e.g.*, *Arista Records, LLC v. Does 1-43*, No. 07-cv-02357-LAB-POR, 2007 WL 4538697, at *1 (S.D. Cal. Dec. 20, 2007). In considering whether good cause exists, factors courts may consider include "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery request; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Palermo v. Underground Sols.*, Inc., No. 12-cv-01223-WQH-BLM, 2012 WL 2106228, at *2 (S.D. Cal. June 11, 2012).

## III. DISCUSSION

Here, Genentech has already obtained a court order finding there is good cause to obtain expedited discovery. (*See* ECF No. 39.) The only issue before this Court is the scope of the expedited discovery. (*See id.*) In considering the appropriate scope, the Court will consider the breadth of the discovery requests and the burden on Lilly to comply with the discovery requests. *See Wi-LAN Inc. v. Lenovo (United States), Inc.*, No. 17CV365-BEN-MDD, 2017 WL 3194692, at *2-3 (S.D. Cal. July 27, 2017) (finding good cause for expedited venue discovery but limiting the requests after considering whether the requests

were overbroad and whether the need for the requested discovery outweighed the prejudice to the opposing party).

The parties do not dispute that 28 U.S.C. § 1400(b) governs the scope of the present dispute regarding venue.[1] (*See* FAC at ¶ 8; ECF Nos. 34-1 at 4-5; 42 at 6; 43 at 5.) Section 1400(b) provides:

> Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business.

28 U.S.C. § 1400(b).

As no party suggests that Lilly resides in this District[2] (*see* FAC at ¶ 2; ECF No. 43 at 6), the parties' briefing is focused on the statute's provision that a civil action for patent infringement may be brought in the judicial district "where the defendant has committed acts of infringement and has a regular and established place of business." (*See* ECF Nos. 42-44.) The Court will address each of these requirements below.

### A. Regular and Established Place of Business

The Federal Circuit has set forth a three-part test for analyzing "the regular and established place of business" prong: "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *In re Cray Inc.*, 871 F.3d at 1360. Each requirement must be met. *Id.*

Lilly concedes that the LBC is "a regular and established place of business" in this District. (*See* ECF Nos. 42-3 at 16 (Lilly admitting that the LBC is a "regular and established place of business" under Section 1400(b)); 43 at 9.) Genentech does not

---

[1] "Section 1400(b) is unique to patent law, and 'constitute[s] 'the exclusive provision controlling venue in patent infringement proceedings'. . . ." *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017) (citing *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1518 (2017)).

[2] "As applied to domestic corporations, 'reside[nce]' in §1400(b) refers only to the State of incorporation." *TC Heartland LLC*, 137 S. Ct. at 1521.

contend that it needs discovery to determine whether another regular and established place of business exists in this District. Accordingly, the Court turns to the next requirement.

### B. Acts of Infringement

Genentech claims that Lilly has committed acts of infringement in this District. (*See* ECF No. 34-1 at 2-3.) Genentech alleges, *inter alia*, that Lilly has infringed its patent by promoting, marketing, selling, and offering to sell Taltz in this District, in violation of 35 U.S.C. § 271.[3] (*See id.* (citing FAC at ¶¶ 7-8).)

In response to Genentech's requests for admissions relating to venue, Lilly admitted the following: (1) Taltz has been sold or offered for sale in the Southern District of California on or after July 3, 2018;[4] (2) Lilly has promoted or authorized third parties to promote the use of Taltz in the Southern District of California on or after July 3, 2018; and (3) Lilly has marketed or authorized third parties to market the use of Taltz in the Southern District of California on or after July 3, 2018. (*See* ECF No. 42-3 at 9-11.) In light of these admissions, Lilly concedes that if it does not prevail on its nexus argument,[5] venue would be proper in this District. (*See* ECF No. 43 at 5, 9.)[6]

---

[3] Under Section 271(a), "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a).

[4] The '654 patent issued on July 3, 2018. (*See* FAC at ¶ 5.)

[5] Lilly contends that a "nexus" is required between alleged "committed acts of infringement" and the "established place of business." (ECF No. 30-1 at 16.) Specifically, Lilly contends that Genentech's "allegations of 'promoting and marketing the use of, offering for sale, and selling Taltz in this district,' are not enough to satisfy the patent venue statute because such commercial activities are *not performed in the LBC, which is a research and development facility*." (ECF No. 30-1 at 16 (emphasis in original) (citing ECF No. 19 at ¶¶ 7-8).)

[6] The Court notes that the determination of whether any act of infringement has occurred is reserved for trial; allegations of infringement are sufficient for a venue determination. *See W. View Research, LLC v. BMW of N. Am., LLC*, No. 16-CV-2590 JLS (AGS), 2018 WL 4367378, at *5 n.2 (S.D. Cal. Feb. 5, 2018) (citing *In re Cordis Corp.*, 769 F.2d 733, 737 (Fed. Cir. 1985)).

However, Lilly claims that if it does prevail on its nexus argument, any further discovery would be unnecessary because its "sworn declarations and certified discovery responses have addressed all relevant factual issues." (*Id.*) The Court addresses this claim below.

### 1. Current Status of Venue Discovery

Following meet and confer efforts, Genentech served amended interrogatories, requests for production, requests for admission, and a Rule 30(b)(6) deposition notice on Lilly. Lilly responded to each request, subject to objections, and stated that it would not provide a Rule 30(b)(6) witness. (*See* ECF No. 42-1 at ¶¶ 10-13, Exhs. 1-4.) Lilly's objections included, *inter alia*, the following:

- Lilly objects to Genentech's requests to the extent they seek documents, information, and admissions on matters that pre-date the July 3, 2018 issuance of the '654 patent, insamuch as the right to exclude others begins on the date the patent is granted.

- Lilly objects to Genentech's requests to the extent they seek documents, information, and admissions regarding Lilly activities beyond the LBC.

- Lilly objects to Genentech's requests to the extent they seek documents, information, and admissions regarding matters outside the relevant window created by the dates of the Complaints in this case—*i.e.*, before July 2, 2018, and after October 17, 2018, insamuch as venue is assessed at the time of filing.[7]

---

[7] Courts in this District have adopted the view that "under the patent venue statute, venue is properly lodged in the district if the defendant had a regular and established place of business at the time the cause of action accrued and suit is filed within a reasonable time thereafter." *Wi-LAN Inc.*, 2017 WL 3194692, at *3 (quoting *Welch Scientific Co. v. Human Eng'g Inst., Inc.*, 416 F.2d 32, 35 (7th Cir. 1969)); *see also* Order Granting Defendant's Motion to Transfer Venue, *Palomar Techs., Inc. v. MRSI Sys., LLC*, No. 15-cv-01484-JLS (KSC) (S.D. Cal. Feb. 5, 2018), ECF No. 53-1. As such, courts in this District have required that venue discovery requests be limited in time to the date the claims accrued plus a reasonable time thereafter. *See id.*; *see also Yardstash Solutions, LLC v. Marketfleet, Inc.*, No. 17-cv-0625-JLS (MDD), 2017 U.S. Dist. LEXIS 177871, at *4 (S.D. Cal. Oct. 26, 2017).

- Lilly objects to Genentech's requests to the extent they seek documents, information, and admissions for products other than Taltz as marketed and sold in the United States.

(*See id.*)

Subject to its objections, including those listed above, Lilly responded as follows (*see id.*):

| INTERROGATORIES | |
|---|---|
| **INTERROGATORY NO. 1:** Describe the discovery, invention, development, design, engineering, experimentation, and testing of ixekizumab in the Southern District of California, including but not limited to the activities performed by or at the direction of Applied Molecular Evolution, Barrett W. Allan, Ying Tang, Barbra Barmettler, and/or James Nelson. | **LILLY RESPONSE:** Lilly responds that research leading to patent applications filed in 2005 directed to the active ingredient of Taltz®, ixekizumab, was conducted at locations in San Diego, but not the LBC, which did not open until 2009. Early research, such as the initial discovery and engineering of the antibody that led to Taltz® as a candidate, was conducted in San Diego by AME ("Applied Molecular Evolution"), a small biotech company acquired by Lilly in 2004. But when the LBC opened in 2009, Taltz® was already in development in Indiana. The Phase I and Phase II clinical trials for Taltz® were not conducted in the LBC; the clinical work for Taltz® was directed from Indiana. Moreover, since its launch, the continued clinical trials for Taltz® have been overseen from Indianapolis, Indiana. No Taltz® Phase III or Phase IV clinical trials have been managed from or conducted in the LBC. (Hale Decl., ¶¶ 5-6; Glaesner Decl., ¶¶ 10-11.) |
| **INTERROGATORY NO. 2:** Describe all completed, ongoing, and planned activities related to Taltz, including its active ingredient | **LILLY RESPONSE:** Lilly responds that past research and development efforts for Taltz® were no longer located in San Diego by the time the LBC opened in 2009. Since its |

8

| | |
|---|---|
| ixekizumab, taking place at the Lilly Biotechnology Center. | launch, the continued clinical trials for Taltz® have been overseen from Indianapolis, Indiana. No Taltz® clinical trials have been managed from or conducted in the LBC. There was no research, development, or clinical trial work for Taltz® at the LBC as of July 2, 2018, or October 17, 2018. (Hale Decl., ¶¶ 5-6; Glaesner Decl., ¶¶ 10-11.) |
| **INTERROGATORY NO. 3:** Describe all completed, ongoing, and planned clinical trials relating to Taltz or its active ingredient ixekizumab conducted in the Southern District of California, including a description of the purpose of each trial, the number of clinical trials, the number and location of clinical trial sites, and the number of participants administered Taltz or its active ingredient ixekizumab or a placebo. | **LILLY RESPONSE:** Lilly responds that no Taltz® clinical trials have been conducted in the LBC. Documents already available to Genentech demonstrate the nature of these trials, and that all study sites in the Southern District of California that have performed clinical testing of Taltz® between July 2, 2018, and October 17, 2018, are not Lilly locations, but rather third-party establishments. These study sites are those of independent physicians and clinics, not Lilly. (ECF No. 29, Exs. 1, 10; Hale Decl., ¶¶ 7-9.) Because these are not Lilly locations, they are immaterial to establishing venue under § 1400(b). *In re Cray, Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017) ("it must be the place of the defendant" to qualify under § 1400(b)). |
| **INTERROGATORY NO. 4:** Describe all seminars, meetings, presentations, and other events pertaining to Taltz sponsored or supported in whole or in part by Lilly taking place in the Southern District of California. | **LILLY RESPONSE:** Lilly responds that no known seminars, meetings, presentations, and other events pertaining to Taltz®, sponsored or supported in whole or in part by Lilly, have taken place in the LBC, or at the direction of the LBC, between July 2, 2018, and October 17, 2018, the relevant period here. |

| | |
|---|---|
| **INTERROGATORY NO. 5:** Describe all instances in which Taltz sales representatives or other Lilly employees performed work, attended seminars, meetings, presentations, and other events pertaining in whole or in part to the sale, offer for sale, promotion, or marketing of Taltz that took place at the Lilly Biotechnology Center. | **LILLY RESPONSE:** Lilly responds that no known Taltz® sales representatives or other Lilly employees performed work, attended seminars, meetings, presentations, and other events pertaining to the sale, offer for sale, promotion, or marketing of Taltz® took place in the LBC, or at the direction of the LBC, between July 2, 2018, and October 17, 2018, the relevant period here. |
| **INTERROGATORY NO. 6:** Identify for each of the following on a yearly and quarterly basis in each of the following geographic regions: the Southern District of California, the State of California as a whole, and the United States as a whole: a) The number of physicians prescribing Taltz; b) The number of patients prescribed Taltz; c) The number of Taltz prescriptions filled; d) The number of physicians to which Lilly or an authorized third party details, markets, or otherwise promotes the use of Taltz; e) The number of Taltz sales representatives; f) Lilly's marketing, advertising, and promotional expenditures related to Taltz (including expenditures for third parties authorized to market, advertise, or promote Taltz); g) The revenue and profit derived from the sales of Taltz; and h) Payments by Lilly to physicians or other health-care providers in connection with Taltz. | **LILLY RESPONSE:** Lilly will not respond to this interrogatory. |
| **INTERROGATORY NO. 7:** Identify each Lilly employee, including the title and job function of each such employee, employed in the Southern District of California and the State of | **LILLY RESPONSE:** Lilly responds that no LBC employees have had job responsibilities between July 2, 2018, and October 17, 2018, that |

| | |
|---|---|
| California as a whole, who have job responsibilities that include, in whole or in part, activities relating to Taltz. | include, in whole or in part, activities relating to Taltz®. |

| **REQUESTS FOR PRODUCTION** ||
|---|---|
| **RFP NO. 1:**<br>Documents sufficient to show completely and accurately the discovery, invention, development, design, engineering, experimentation, and testing of ixekizumab in the Southern District of California, including but not limited to activities performed by or at the direction of Applied Molecular Evolution, Barrett W. Allan, Ying Tang, Barbra Barmettler, and/or James Nelson. (*See, e.g.*, Dkt. No. 30-4, Decl. of Wolfgang Glaesner, Ph.D. ¶¶ 10-11; Dkt. No. 29-3, Ex. 2, p. 66.) | **LILLY RESPONSE:**<br>Lilly responds that there are no responsive documents and things to produce pursuant to this request. |
| **RFP NO. 2:**<br>Documents sufficient to show completely and accurately the number, identity, title, and job function of each Lilly employee in the Southern District of California who is responsible as part of their job function, in whole or part, for any activity or activities regarding Taltz. | **LILLY RESPONSE:**<br>Lilly responds that there are no responsive documents to produce pursuant to this request. |
| **RFP NO. 3:**<br>To the extent not previously requested, all documents used or relied upon by Lilly or its counsel to prepare the responses to any Genentech Interrogatory or Request for Admission, including all documents identified or cited therein. | **LILLY RESPONSE:**<br>Lilly further incorporates by reference all general and specific objections made elsewhere "to any Genentech Interrogatory or Request for Admission, including all documents identified or cited therein," and will not produce documents under this request if otherwise objected to herein or therein. |

| | |
|---|---|
| **REQUESTS FOR ADMISSION** ||
| **RFA NO. 1:** Admit that Taltz prescriptions have been filled in the Southern District of California on or after July 3, 2018. | **LILLY RESPONSE:** Lilly admits, while specifying that no Taltz® prescriptions have been filled in the LBC, or at the direction of the LBC, at any time, which is the "regular and established place of business" identified for the narrow venue question at issue under 28 U.S.C. § 1400(b). *See* ECF No. 30 at 2, 10. |
| **RFA NO. 2:** Admit that Lilly has sold or offered to sell Taltz in the Southern District of California on or after July 3, 2018. | **LILLY RESPONSE:** Lilly admits that Taltz® has been sold or offered for sale in the Southern District of California on or after July 3, 2018, while further specifying that Taltz® has not been sold or offered for sale in the LBC, or at the direction of the LBC, on or after July 3, 2018, which is the "regular and established place of business" identified for the narrow venue question at issue under 28 U.S.C. § 1400(b). *See* ECF No. 30 at 2. |
| **RFA NO. 3:** Admit that Lilly has promoted or authorized third parties to promote the use of Taltz in the Southern District of California on or after July 3, 2018. | **LILLY RESPONSE:** Lilly admits, while specifying that Lilly has not promoted or authorized third parties to promote the use of Taltz® in the LBC, or at the direction of the LBC, on or after July 3, 2018, which is the "regular and established place of business" identified for the narrow venue question at issue under 28 U.S.C. § 1400(b). *See* ECF No. 30 at 2. |
| **RFA NO. 4:** Admit that Lilly has marketed or authorized third parties to market the use of Taltz in the Southern District of California on or after July 3, 2018. | **LILLY RESPONSE:** Lilly admits, while specifying that Lilly has not marketed or authorized third parties to market the use of Taltz® in the LBC, or at the direction of the LBC, on |

| | |
|---|---|
| | or after July 3, 2018, which is the "regular and established place of business" identified for the narrow venue question at issue under 28 U.S.C. § 1400(b). *See* ECF No. 30 at 2, 10. |
| **RFA NO. 5:**<br>Admit that ixekizumab was at least partially invented in the Southern District of California. | **LILLY RESPONSE:**<br>Lilly states that it cannot admit or deny at this point because the issue of where and when ixekizumab was invented requires a complex and nuanced legal analysis that for purposes of this limited venue discovery is neither relevant nor proportional. Lilly states that the patent application relevant to ixekizumab was filed before the LBC was opened in 2009, and the LBC is the "regular and established place of business" identified for the narrow venue question at issue under 28 U.S.C. § 1400(b). *See* ECF No. 30 at 2. |
| **RFA NO. 6:**<br>Admit that Lilly acquired Applied Molecular Evolution in 2004. | **LILLY RESPONSE:**<br>Lilly admits, while specifying that Lilly's acquisition of AME predated the opening of the LBC in 2009, which is the "regular and established place of business" identified for the narrow venue question at issue under 28 U.S.C. § 1400(b). *See* ECF No. 30 at 2. |
| **RFA NO. 7:**<br>Admit that clinical trials involving Taltz or its active ingredient ixekizumab are ongoing in the Southern District of California. | **LILLY RESPONSE:**<br>Lilly admits, while specifying that no clinical trials involving Taltz® or its active ingredient ixekizumab have occurred at the LBC, or at the direction of the LBC, at any time, which is the "regular and established place of business" identified for the narrow venue question at issue under 28 U.S.C. § 1400(b). *See* ECF No. 30 at 2. |

| | |
|---|---|
| **RFA NO. 8:**<br>Admit that the research and development of ixekizumab occurred at least in part at the Lilly Biotechnology Center in San Diego, California. | **LILLY RESPONSE:**<br>Lilly denies. |
| **RFA NO. 9:**<br>Admit that the Lilly Biotechnology Center in San Diego, California, is "a regular and established place of business" under 28 U.S.C. § 1400(b). | **LILLY RESPONSE:**<br>Lilly admits. |
| **FRCP 30(b)(6) DEPOSITION TOPICS** ||
| **TOPIC NO. 1.**<br>The research performed at Applied Molecular Evolution or Lilly Biotechnology Center recited in disclosures of U.S. Patent Nos. 7,838,638 and 8,110,191 and the article titled "Generation and Characterization of Ixekizumab, a Humanized Monoclonal Antibody That Neutralizes Interleukin-17A," which is dated April 19, 2016, was published in the Journal of Inflammation Research, and was attached as Exhibit 3 to Genentech's Amended and Supplemental Complaint (Dkt. 29-4). | **LILLY RESPONSE:**<br>Lilly will not provide a Rule 30(b)(6) witness to testify on this deposition topic. |
| **TOPIC NO. 2.**<br>The discovery, invention, development, design, engineering, experimentation, and testing of ixekizumab in the Southern District of California. (*See, e.g.*, Dkt. No. 30-4, Decl. of Wolfgang Glaesner, Ph.D. ¶¶ 10-11; Dkt. No. 29-3, Ex. 2, p. 66.) | **LILLY RESPONSE:**<br>Lilly will not provide a Rule 30(b)(6) witness to testify on this deposition topic. |
| **TOPIC NO. 3.**<br>Completed, ongoing, and planned activities related to Taltz, including its | **LILLY RESPONSE:**<br>Lilly will not provide a Rule 30(b)(6) witness to testify on this deposition topic. |

| | |
|---|---|
| active ingredient ixekizumab, taking place at the Lilly Biotechnology Center. | |
| **TOPIC NO. 4.** Completed, ongoing, and planned clinical trials relating to Taltz or its active ingredient ixekizumab conducted in the Southern District of California, including but not limited to the number of clinical trials, the number and location of clinical trial sites, and the number of participants administered Taltz or its active ingredient ixekizumab or a placebo. | **LILLY RESPONSE:** Lilly will not provide a Rule 30(b)(6) witness to testify on this deposition topic. |
| **TOPIC NO. 5.** Marketing, promotion, and sales activities in the Southern District of California relating to Taltz. | **LILLY RESPONSE:** Lilly will not provide a Rule 30(b)(6) witness to testify on this deposition topic. |

2. <u>Motion to Compel Further Responses</u>

In its present motion, Genentech requests that this Court order Lilly to provide further discovery responses so that it can assess whether there is "any reasonable relationship between Taltz and the LBC."[8] (ECF No. 42 at 9-10.) In support of this position, Genentech points to two of the cases Lilly cited in support of its nexus argument, *Scaramucci v. FMC Corp.*, 258 F. Supp. 598, 602 (W.D. Okla. 1966) and *Jeffrey Galion, Inc. v. Joy Mfg. Co.*, 323 F. Supp. 261 (N.D. W. Va. 1971). (*Id.*) A dispute over the scope of the holding in *Scaramucci* appears to be central to the parties' dispute over whether Lilly should be required to provide further responses to Genentech's discovery requests. (*See* ECF Nos. 42 at 9-12; ECF No. 42 at 12 n.9.)

---

[8] Although Genentech "disagrees as a matter of law that any such nexus is required," it claims that it "still should be permitted to test the veracity of Lilly's claim that no such nexus exists." (ECF No. 34-1 at 5.)

15

In *Scaramucci*, the court determined that the defendant maintained in the district (1) a sales representative of the accused valve who worked out of his home, and (2) a division that manufactured and sold a line of equipment different from the accused valve (OCT Division). *Scaramucci*, 258 F. Supp. at 600. The court further determined that the defendant had committed an act of infringement in the district with reference to the accused valve involved because it sold the valve in the district within the meaning of 35 U.S.C. § 271(a), and actively induced infringement regarding the valve in the district within the meaning of 35 U.S.C. § 271(b). *Id.* at 600-01.

However, turning to the next requirement, the *Scaramucci* court concluded that the defendant did not have a regular and established place of business in the district "within the intent, purpose and meaning of 28 U.S.C. § 1400(b)." *Id.* at 601. First, the court held that the activities of the sales representative did not constitute a "regular and established place of business." *Id.* Next, the court held that the OCT Division that manufactured and sold a line of equipment *different from the accused valve* could not satisfy the venue statute. *Id.* The court reasoned:

> As to the OCT Division and its office in this judicial district the question is more difficult. At first blush this would seem to satisfy the venue statute. But this is a special patent venue statute and a consideration of the history of patent venue, this statute, its predecessor statute and the apparent purpose and intent of the present statute, leads the Court to the conclusion that *this requirement is lacking in this case notwithstanding the defendant has another Division with a regular and established place of business in this judicial district*. The former patent venue statute allowed suit wherever the offender could be served. The present statute was intended to narrow or restrict this venue.

*Id.* (emphasis added).

The *Scaramucci* court then cited cases discussing the purpose of the patent venue statute. *Id.* at 602 (citing *Morse v. Master Specialties Co.*, 239 F. Supp. 641, 642 (D.N.J. 1964); *Ruth v. Eagle-Picher Co.*, 225 F.2d 572, 577 (10th Cir. 1955)). In conclusion, the court stated:

> It is therefore concluded that for the special purpose of patent infringement venue, the OCT Division office of the defendant in this judicial district, which Division and office has absolutely nothing to do with the accused valve or its manufacture, sale, service or distribution here or anywhere else, will not satisfy the requirement of said special patent venue statute that the defendant have 'a regular and established place of business' in this judicial district. *It is the opinion of the Court that there must be some reasonable or significant relationship between the accused item and any regular and established place of business of the accused in the judicial district.*

*Id.* at 602 (emphasis added).

Based on the foregoing, Genentech contends that any "reasonable or significant relationship" between Taltz and the LBC ("or its predecessor") is relevant to establishing a nexus, without any restriction as to time or activity. (*See* ECF Nos. 42 at 8-12; 44 at 2.) Lilly, on the other hand, argues that Genentech has taken the *Scaramucci* court's words out of context, stating:

> This language cannot render the "nexus" analysis so broad as to admit as "acts of infringement" activities legally unavailable and/or not cognizable under § 271. Such are not "reasonable or significant" for purposes of the § 1400(b) analysis. *Scaramucci*'s very facts demonstrate it was addressing contemporary manufacturing and sales, not activities pre-dating by many years the patent-in-suit or the filing of the case, . . . so this language cannot possibly be read as Genentech wants.

(ECF No. 42 at 12 n.9.)

For purposes of the present motion, the Court finds that resolving the dispute is unnecessary. With one exception, the Court finds that Lilly has already sufficiently responded to Genentech's discovery requests in a manner that will enable the district judge, if necessary, to determine whether a nexus exists between the alleged acts of infringement and the LBC. (*See* ECF No. 42-1 at ¶¶ 10-13, Exhs. 1-4.) The one exception concerns Interrogatory No. 2. In Interrogatory No. 2, Genentech requests that Lilly "[d]escribe all completed, ongoing, and planned activities related to Taltz, including its active ingredient ixekizumab, taking place at the Lilly Biotechnology Center." (ECF No. 42-5 at 9.) Lilly

limited its response to research, development, and clinical work for Taltz at the LBC. (*Id.* at 9-10.) However, the request is broader than research, development, or clinical work. Accordingly, Lilly shall supplement its response and describe all activities related to Taltz, including its active ingredient ixekizumab, taking place at the LBC between July 2, 2018 and October 17, 2018.[9]

As to the remaining discovery requests, Genentech does not adequately explain why additional detail is required for resolution of the venue motion pending before the district judge.[10] Moreover, the Court finds that requiring Lilly to further respond to Genentech's discovery requests, as well as produce a Rule 30(b)(6) witness, would be unduly burdensome.

The Court also finds that Genentech's discovery requests relating to any purported transfer motion to be overbroad and lacking in relevancy at this stage. Lilly's pending motion seeks to dismiss this action for improper venue under Rule 12(b)(3) or, in the alternative, to transfer it to the Southern District of Indiana pursuant to 28 U.S.C. § 1406. (*See* ECF Nos. 30 at 2; 30-1 at 13, 22, 25.) Section 1406(a) provides: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28. U.S.C. § 1406(a). Therefore, if the district judge

---

[9] The Court is not persuaded that additional information concerning activities relating to Taltz taking place at the LBC which predate the filing of the Complaint will assist the district judge in resolving the pending motion.

[10] For example, Genentech does not adequately explain how further detail regarding the "discovery, invention, development, design, engineering, experimentation, and testing of ixekizumab in the Southern District of California" will assist the district judge in determining whether a "reasonable or significant relationship" exists between Taltz and the LBC, in light of Lilly's interrogatory responses stating that "[e]arly research, such as the initial discovery and engineering of the antibody that led to Taltz as a candidate, was conducted in San Diego by AME ("Applied Molecular Evolution"), a small biotech company acquired by Lilly in 2004." (*See* ECF No. 42-5 at 8-9; *see also* ECF No. 43-1 at ¶ 11.)

determines that this District is an improper venue, the case can only be dismissed or transferred to a district "in which it could have been brought" under Section 1400(b), such as the Southern District of Indiana, where Lilly is incorporated. (*See* FAC at ¶ 2.) If, however, the district judge determines that venue is proper in this District, there is no motion presently before this Court pursuant to 28 U.S.C. § 1404, which permits a district judge to transfer the case to another district "[f]or the convenience of parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a).

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Genentech's motion to compel further responses. As set forth above, Lilly shall further respond to Interrogatory No. 2 within **five (5) court days** of the date of this Order.

**IT IS SO ORDERED.**

Dated: April 29, 2019

Hon. Jill L. Burkhardt
United States Magistrate Judge