MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
ESTHER KIM CHANG (CA SBN 258024)
EChang@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

ERIC M. ACKER (CA SBN 135805)
EAcker@mofo.com
MORRISON & FOERSTER LLP
12531 High Bluff Drive Suite 100
San Diego, California 92130-2040
Telephone: 858.720.5100
Facsimile: 858.720.5125

Attorneys for Plaintiff
GENENTECH, INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENENTECH, INC., a Delaware corporation,<br><br>          Plaintiff,<br><br>  v.<br><br>ELI LILLY AND COMPANY, an Indiana corporation,<br><br>          Defendant. | Case No.  3:18-cv-01518-JLS-JLB<br><br>**GENENTECH'S OPPOSITION TO LILLY'S MOTIONS TO DISMISS AND STRIKE**<br><br>Judge:  Hon. Janis L. Sammartino<br>Dept:   4A |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................... 1

II. LILLY'S MOTION TO DISMISS FOR IMPROPER VENUE
SHOULD BE DENIED .................................................................................. 1

    A. Venue Is Proper in This District Because Lilly Has Committed
Acts of Infringement and Has a Regular and Established Place
of Business in This District ................................................................ 2

    B. No "Nexus" Is Required .................................................................... 3

    C. Lilly Has Admitted The Presence of a Nexus Even Under Its
Own Venue Theory ............................................................................ 5

III. THE COURT SHOULD DENY LILLY'S MOTIONS TO STRIKE
AND DISMISS GENENTECH'S WILLFUL INFRINGEMENT
CLAIM .......................................................................................................... 6

    A. Paragraphs 42 and 43 Should Not be Stricken From the
Complaint ........................................................................................... 7

    B. Even Without Information Learned from Alleged Settlement
Discussions, Genentech Has Pleaded Sufficient Facts to
Establish a Plausible Claim for Willfulness ...................................... 9

IV. CONCLUSION ............................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Can Co. v. Crown Cork & Seal Co.*,
   433 F. Supp. 333 (E.D. Wis. 1977) .................................................................... 3

*Bourns, Inc. v. Allen–Bradley Co.*,
   No. 70 C 1992, 1971 WL 17177 (N.D. Ill. Apr. 5, 1971) ................................... 3

*Bristol-Myers Squibb Co. v. Mylan Pharm. Inc.*,
   No. CV 17-379-LPS, 2017 WL 3980155 (D. Del. Sept. 11, 2017) ..................... 3

*Cabot Corp. v. WGM Safety Corp.*,
   562 F. Supp. 891 (D. Mass. 1983) ..................................................................... 3

*Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc.*,
   217 F. Supp. 2d 1028 (C.D. Cal. 2002) ............................................................. 6

*Cortina v. Goya Foods, Inc.*,
   94 F. Supp. 3d 1174 (S.D. Cal. 2015) ................................................................ 6

*In re Cray*,
   871 F.3d 1355 (Fed. Cir. 2017) .......................................................................... 4

*Deere & Co. v. Int'l Harvester Co.*,
   710 F.2d 1551 (Fed. Cir. 1983) .......................................................................... 7

*Finjan, Inc. v. ESET, LLC*,
   No. 3:17-cv-0183-CAB-(BGS), 2017 WL 1063475 (S.D. Cal. Mar.
   21, 2017) ............................................................................................................ 9

*Finjan, Inc. v. SonicWall, Inc.*,
   No. 17-CV-04467-BLF, 2018 WL 2234370 (N.D. Cal. May 16,
   2018) .............................................................................................................. 8, 9

*In re Google*,
   No. 2018-152, 2018 WL 5536478 (Fed. Cir. Oct. 29, 2018),
   rehearing *en banc* denied, 914 F.3d 1377 (2019) .......................................... 3, 4

*Halo Electronics, Inc. v. Pulse Electronics., Inc.*,
   136 S. Ct. 1923 (2016) ....................................................................................... 9

*Huawei Techs. Co. v. T-Mobile US, Inc.*,
  No. 2:16-CV-00052-JRG-RSP, 2017 U.S. Dist. LEXIS 43240 (E.D.
  Tex. Feb. 21, 2017)............................................................................................... 10

*Jeffrey Galion, Inc. v. Joy Manufacturing Co.*,
  323 F. Supp. 261 (N.D. W. Va. 1971)..................................................................... 4

*Mallinckrodt IP v. B. Braun Med. Inc.*,
  No. CV 17-365-LPS, 2017 WL 6383610 (D. Del. Dec. 14, 2017)......................... 3

*National Presto Industries, Inc. v. West Bend Co.*,
  76 F.3d 1185 (Fed. Cir. 1996)................................................................................. 8

*Plexxikon Inc. v. Novartis Pharm. Corp.*,
  No. 17-CV-04405-HSG, 2017 WL 6389674 (N.D. Cal. Dec. 7,
  2017)....................................................................................................................... 3

*SanDisk Corp. v. STMicroelectronics, Inc.*,
  480 F.3d 1372 (Fed. Cir. 2007)............................................................................... 7

*Scaramucci v. FMC Corp.*,
  258 F. Supp. 598 (W.D. Okla. 1966) ...................................................................... 4

*Seven Networks, LLC v. Google LLC*,
  315 F. Supp. 3d 933 (E.D. Tex. 2018) .................................................................... 3

*Simplivity Corp. v. Springpath, Inc.*,
  No. 4:15-13345-TSH, 2016 WL 5388951 (D. Mass. July 15, 2016).................... 10

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
  137 S. Ct. 1514 (2017) ........................................................................................... 2

*Trading Techs. Int'l, Inc. v. BCG Partners, Inc.*,
  No. 10 C 715, 2011 WL 3946581 (N.D. Ill. Sept. 2, 2011) .................................... 8

*UCB, Inc. v. Mylan Techs., Inc.*,
  No. CV 17-322-LPS, 2017 WL 5985559 (D. Del. Dec. 1, 2017).......................... 3

*Wi-LAN Inc. v. Lenovo (United States), Inc.*,
  No. 17CV365-BEN-MDD, 2017 WL 3194692 (S.D. Cal. July 27,
  2017)....................................................................................................................... 3

**Statutes**

28 U.S.C. §1400(b) ............................................................................................................ 2

28 U.S.C. §1404(a) ............................................................................................................ 1

28 U.S.C. §1406 ............................................................................................................ 1, 2

28 U.S.C. §1406(a) ............................................................................................................ 1

**Other Authorities**

8 Chisum on Patents § 21.02 (2018) ................................................................................. 3

60 Am. Jur. 2d Patents § 747 ............................................................................................ 3

Federal Rule of Evidence 408 ....................................................................................... 7, 9

## I. INTRODUCTION

Lilly moves to dismiss Genentech's Amended and Supplemental Complaint (ECF No. 29, the "Complaint" or "Compl.") for improper venue, or in the alternative, to transfer the case to a district in which it could have been brought, exclusively under 28 U.S.C. Section 1406.[1]  (*See* ECF No. 38 at 11; ECF No. 45 at 18-19; Declaration of Esther Kim Chang ("Chang Decl."), filed herewith, Ex. 1 at 3 (Correspondence from counsel for Lilly).)  Lilly's motion turns on whether the patent venue statute requires a nexus between the "acts of infringement" and the "regular and established place of business," and, if it does, whether Genentech can demonstrate such a nexus.  As prior decisions in this District and numerous other courts support, no such nexus is required.  But even if a nexus were required, the standard is met here.

The Court should also reject Lilly's motion to dismiss or strike Genentech's claim of willful infringement and certain factual recitations in the Complaint. Lilly's motion turns on whether a pleading that references a license offer (and subsequent rejection) made *before* Genentech served its original Complaint should be stricken.  But Lilly's characterization of the challenged allegations as settlement negotiations is incorrect, and ignores Federal Circuit case law that deems such pre-dispute communications admissible.  And even without those factual recitations, Genentech has sufficiently pleaded its claim for willful infringement.

Lilly's motion should be denied in its entirety.

## II. LILLY'S MOTION TO DISMISS FOR IMPROPER VENUE SHOULD BE DENIED

Lilly's motion to dismiss or transfer pursuant to Section 1406(a) (ECF No. 30, "Mot.") should be denied.  That section requires dismissal or transfer only

---

[1] Lilly has abandoned its reliance on any "convenience" factors, under 28 U.S.C. Section 1404(a).  (ECF No. 38 at 11; Chang Decl. Ex. 2 at 7-8 (Correspondence from counsel for Lilly).)

if venue in the district is improper. 28 U.S.C. § 1406. As demonstrated below, venue in this District is proper. Lilly's argument, which is premised on a supposed "nexus" requirement, does not survive scrutiny.

### A. Venue Is Proper in This District Because Lilly Has Committed Acts of Infringement and Has a Regular and Established Place of Business in This District

The patent venue statute, Section 1400(b), provides that an action may be brought in the judicial district where the defendant: (1) resides or (2) "has committed acts of infringement and has a regular and established place of business." 28 U.S.C. §1400(b); *see also TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1516-17 (2017). Venue is proper in this District because Lilly meets the twin requirements of the second prong of Section 1400(b)—acts of infringement and a regular and established place of business.

As to the first requirement, Lilly has admitted that it has promoted, marketed, offered to sell, and sold Taltz in this District, and that it has ongoing clinical trials involving Taltz in this District. (Chang Decl., Ex. 3 at Resps. to Reqs. for Admis. Nos. 2-4 and 7; *see also* ECF No. 43 at 2-3; Mot. at 6, 11 n.2; ECF No. 38 at 4-5.) These admissions are sufficient to establish for venue purposes that Lilly has committed acts of infringement in this District.

As to the second requirement, Lilly has also admitted that its Lilly Biotechnology Center ("LBC"), located in San Diego, California, is a regular and established place of business. (Chang Decl., Ex. 3 at Resp. to Req. for Admis. No. 9; ECF No. 43 at 5; ECF No. 45 at 5 ("Lilly concedes that the LBC is a 'regular and established place of business' in this District.") The LBC was established in 2009 and continues in operation. The LBC employs about 230 people and is a part of Lilly Research Laboratories, which is the research and development division of Lilly. (Mot. at 2; ECF No. 30-4, Declaration of Wolfgang Glaesner, Ph.D. ("Glaesner Decl.") ¶¶ 6-8.) The requirement of a regular and established place of business in this District is readily met.

### B. No "Nexus" Is Required

The sole basis for Lilly's motion is that, despite the plain language of the statute, there must be a "nexus" between the "acts of infringement" and the "regular and established place of business." Lilly defines this nexus as requiring that the acts of alleged infringement occur at the regular and established place of business. (Mot. at 8.)

Lilly's argument is contrary to the great weight of authority that has addressed this issue. Many district courts—including this one—have found that no nexus is required. In *Wi-LAN Inc. v. Lenovo (United States), Inc.*, Judge Benitez "adopt[ed] the view that the patent venue statute creates *no relationship* between the act of infringement and the regular and established place of business." No. 17CV365-BEN-MDD, 2017 WL 3194692, at *3 (S.D. Cal. July 27, 2017) (internal quotation and citation omitted). The Northern District of California has likewise concluded that "the plain language of the statute does not include a nexus requirement." *Plexxikon Inc. v. Novartis Pharm. Corp.*, No. 17-CV-04405-HSG, 2017 WL 6389674, at *2 (N.D. Cal. Dec. 7, 2017). District courts throughout the country are in accord.[2]

The Federal Circuit has also ruled consistently on this issue. *In re Google*, No. 2018-152, 2018 WL 5536478 (Fed. Cir. Oct. 29, 2018), rehearing *en banc* denied, 914 F.3d 1377 (2019). In denying a writ of mandamus seeking the grant a motion to dismiss or transfer for improper venue based in part on a lack of nexus,

---

[2] *See Seven Networks, LLC v. Google LLC*, 315 F. Supp. 3d 933, 946 (E.D. Tex. 2018); *Mallinckrodt IP v. B. Braun Med. Inc.*, No. CV 17-365-LPS, 2017 WL 6383610, at *2 n.2 (D. Del. Dec. 14, 2017); *UCB, Inc. v. Mylan Techs., Inc.*, No. CV 17-322-LPS, 2017 WL 5985559, at *3 n.4 (D. Del. Dec. 1, 2017); *Bristol-Myers Squibb Co. v. Mylan Pharm. Inc.*, No. CV 17-379-LPS, 2017 WL 3980155, at *20 (D. Del. Sept. 11, 2017); *Cabot Corp. v. WGM Safety Corp.*, 562 F. Supp. 891, 892 (D. Mass. 1983); *Am. Can Co. v. Crown Cork & Seal Co.*, 433 F. Supp. 333, 336 (E.D. Wis. 1977); *Bourns, Inc. v. Allen–Bradley Co.*, No. 70 C 1992, 1971 WL 17177, at *2 (N.D. Ill. Apr. 5, 1971); *also* 60 Am. Jur. 2d Patents § 747 ("The regular and established place of business does not need to be a business connected to the alleged infringement."); 8 Chisum on Patents § 21.02 (2018) ("Furthermore, there need be no particular connection between the activity at the place of business and the alleged act of infringement.").

the Federal Circuit concluded that there was "no 'clear and indisputable' error in the [district] court's resolution of this issue," *viz.*, that no nexus was required between the infringing acts and the regular and established place of business. *Id.* at *3. The court went on to note: "That resolution finds at least a substantial basis in the language of the statute (which uses simply 'and,' not another phrase pointing to a tighter linkage) and in various precedents following the text in that respect." *Id.* This is in contrast with *In re Cray*, on which Lilly heavily relies, in which the Federal Circuit analyzed the "place of business" requirement in light of the legislative history and made no mention of any nexus requirement. 871 F.3d 1355 at 1361 (Fed. Cir. 2017).

Against this overwhelming authority, Lilly relies on two district court cases from over 40 years ago: *Scaramucci v. FMC Corp.*, 258 F. Supp. 598 (W.D. Okla. 1966) and *Jeffrey Galion, Inc. v. Joy Manufacturing Co.*, 323 F. Supp. 261 (N.D. W. Va. 1971). Neither is precedential in this District. But even assuming the cases have precedential value, they do not support dismissal here.

In *Scaramucci*, the court held only that "there must be *some reasonable or significant relationship* between the accused item and any regular and established place of business of the accused in the judicial district." 258 F. Supp. at 602 (emphasis added). In discussing the different divisions of the defendant's company, the court found that one division manufactured and sold the alleged infringing device in another district, while the division within the district had "*absolutely nothing to do* with the accused [product] or its manufacture, use, sell, service or distribution." *Id.* (emphasis added). And in *Jefferey Galion*, the defendants' activities did not even constitute or create a regular and established place of business (a fact that Lilly does not dispute, see Section II.A., above). *See Jeffrey Galion*, 323 F. Supp. at 265-66.

Here, there is "some reasonable or significant relationship" between Taltz and the LBC and AME, the San Diego company acquired by Lilly. The initial

discovery and development of ixekizumab, the active ingredient in Taltz, occurred at AME. (Glaesner Decl. ¶¶ 10-11.) Research leading to patent applications filed in 2005 directed to ixekizumab was conducted at AME or the LBC. (*Id*. ¶ 10.) The AME group in San Diego worked closely on discovery, engineering, and biological testing of Taltz with a research team in Indianapolis. (*Id*. ¶ 11.) A 2016 publication by Lilly scientists, titled "Generation and Characterization of Ixekizumab, a Humanized Monoclonal Antibody That Neutralizes Interleukin-17A," locates four of its authors at the LBC in San Diego, where they are still employed. (*Compare id.* ¶ 16 *with* Compl. ¶ 11, Ex. 3.)

Lilly has itself acknowledged the tie between its physical presence in this District and Taltz. In a 2017 interview, Lilly's Senior Vice President of Biotechnology and Immunology Research, Thomas Bumiol, was asked, "As you look back over the last 13 years since Lilly's presence was established in San Diego, what are you most proud of?"; to which he responded, "While we've had a number of innovative biologic candidates come through our labs which continue to be evaluated clinically, we are very proud of Taltz® (ixekizumab), which was approved in the U.S. in 2016 for the treatment of psoriasis." (Compl. ¶ 14, Ex. 9.)

Thus, even Lilly's two 40-year old cases cannot save its motion, and are contrary to the weight of the case law.

### C. Lilly Has Admitted The Presence of a Nexus Even Under Its Own Venue Theory

Even if a nexus between the place of business and infringing acts were required as Lilly argues, Lilly has admitted that such a nexus exists: Lilly has used the active ingredient in Taltz, ixekizumab, at the LBC, after the patent issued and this complaint was filed, and that use constitutes an allegedly infringing act.

After the Magistrate-Judge ordered Lilly to respond to Genentech's pending interrogatory, Lilly finally acknowledged that it had "used" ixekizumab at the LBC during the time period relevant to the venue inquiry:

> During the period between July 2, 2018, and October 17, 2018, ixekizumab was one of several control reagents in a limited set of experiments conducted at the LBC.[3]

(Chang Decl., Ex. 4 at 26 (Supp. Resp. to Interrog. No. 2).) Ixekizumab is the antibody in Taltz that meets the limitations of Genentech's patent claims. (Compl. ¶¶ 28, 29, 32, 35, & 38.) Lilly's admitted "use" of ixekizumab at the LBC represents an act of alleged infringement. (*Id.* ¶ 26 (alleging that Lilly's commercial "use" of Taltz constitutes an act of infringement.).)

### III. THE COURT SHOULD DENY LILLY'S MOTIONS TO STRIKE AND DISMISS GENENTECH'S WILLFUL INFRINGEMENT CLAIM

Motions to strike are generally disfavored. *Cortina v. Goya Foods, Inc.*, 94 F. Supp. 3d 1174, 1182 (S.D. Cal. 2015). "Given their disfavored status, courts often require a showing of prejudice by the moving party" before striking matter from a pleading. *Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc.*, 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002). Here, Lilly has failed to make such a showing.

Lilly has also failed to show that Genentech's willfulness claim should be stricken. Genentech's reliance on its allegation that it offered Lilly a license (which Lilly rejected) *before* it served its original Complaint was entirely proper, and should therefore not be stricken. Moreover, even if the allegations based on the pre-litigation licensing discussions are stricken, Genentech's willfulness claim is sufficiently pleaded and should not be stricken.

---

[3] In response to Genentech's interrogatory seeking all "activities related to Taltz, including its active ingredient ixekizumab, taking place at the Lilly Biotechnology Center," Lilly first asserted that "[t]here was no research, development, or clinical trial work for Taltz® at the LBC as of July 2, 2018, or October 17, 2018." (ECF No. 42-5 at 7-8 (Interrog. 2).) By failing to report its use of ixekizumab at the LBC, Lilly's initial response was at least incomplete.

### A. Paragraphs 42 and 43 Should Not be Stricken From the Complaint

Lilly's entire motion to strike is based on its characterization of Genentech's willfulness allegations, made in paragraphs 42 and 43 of the Complaint, as "settlement discussions," which it then alleges are protected under Federal Rule of Evidence 408. (Mot. at 21.)  Paragraphs 42 and 43 are reprinted below:

> 42.  On June 27, 2018, Genentech notified Lilly that the '654 patent would issue on July 3, 2018, and offered Lilly a license at a royalty rate to be determined by arbitration. Lilly rejected the offer.
>
> 43.  After the '654 patent issued on July 3, 2018, Lilly continued manufacturing, using, offering for sale, marketing, promoting, and/or selling Taltz.  Lilly knows of the '654 patent, Genentech's infringement allegations, and the evidence of infringement represented by its own admissions.  Thus, any manufacture, use, import, offer for sale, and/or sale of Taltz after July 3, 2018, is willful.

(Compl. ¶¶ 42-43.)  These paragraphs should not be stricken, as they are not referencing protected settlement discussions.

As to paragraph 42, Lilly argues that Genentech's June 27, 2018 email is protected under Rule 408, such that any reference to its contents should be stricken from the Complaint.  But the email was sent *before* Genentech had filed its original Complaint, such that there was no active litigation and no dispute over any existing claims.  Under Federal Circuit precedent, exclusion of evidence under Rule 408 is limited to "actual disputes over existing claims," such that an offer to license a patent when there are no charges of infringement is not an offer to settle a claim in dispute. *Deere & Co. v. Int'l Harvester Co.*, 710 F.2d 1551, 1557 (Fed. Cir. 1983) ("Rule 408, on its face, is limited to actual disputes over existing claims and, accordingly, cannot be applicable to an offer, albeit one ultimately rejected, to license an, as yet, uncontested patent"); *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1375 n. 1 (Fed. Cir. 2007) (Rule 408 "relates to evidence of efforts toward compromising or attempting to compromise *a claim in litigation*" and does

not prevent reliance on the licensing discussions support claims (emphasis added).).

Moreover, Lilly itself notes that the email was not styled as a "Rule 408" settlement communication. Nor did the email bear any other indicia of a settlement communication. By omitting any settlement legends in this communication, Genentech evidenced its intent that its offer, which included a proposal to submit a royalty dispute to arbitration, not be treated as a settlement communication under Rule 408.[4] *Cf. Trading Techs. Int'l, Inc. v. BCG Partners, Inc.*, No. 10 C 715, 2011 WL 3946581, at *1-*2 (N.D. Ill. Sept. 2, 2011) (striking knowledge allegations in complaint based on post-complaint settlement communications where license term sheet bore "For Settlement Purposes Only /Subject to F.R.E. 408" legend).

*National Presto Industries, Inc. v. West Bend Co.*, 76 F.3d 1185 (Fed. Cir. 1996), which Lilly relies on, is not to the contrary. The *National* court cited to, and quoted from, *Deere*, reiterating its precedent that "exclusion of evidence under Rule 408 is limited to 'actual disputes over existing claims.'" *Id.* at 1197 (quoting *Deere*, 710 F.2d at 1557). The court went on to review the trial court's evidentiary rulings "with extreme deference," and noted that "in matters of trial management the district court *has a limited right to be wrong* without incurring appellate intrusion." *Id.* (emphasis added). According to the court, "[a]ppellate review of evidentiary rulings is extremely restricted; it must be shown that there was manifest error." *Id.* The court then found that no such showing had been made in that case. *Id.* Nothing about this holding upends Federal Circuit precedent regarding the limited applicability of Rule 408.

---

[4] Even if any of Genentech's allegations were premised on settlement communications, their use in the Complaint is proper. Notwithstanding Lilly's cited authority, there should be no bar to using settlement discussions to support a willfulness claim at the pleading stage. *See Finjan, Inc. v. SonicWall*, Inc., No. 17-CV-04467-BLF, 2018 WL 2234370, at *5 (N.D. Cal. May 16, 2018) (denying motion to dismiss based in part on position that settlement negotiations cannot be basis for willfulness claim).

As to paragraph 43, Lilly argues that Genentech's reference to "the evidence of infringement represented by [Lilly's] own admissions" must relate to the pre-litigation licensing negotiations, which it again deems protected under Rule 408. (Mot. at 22.) But Lilly is misreading the allegation in paragraph 43. The "admissions" referred to in the paragraph relate not to licensing negotiations, but to paragraphs 17 and 18 of the Complaint, which in turn incorporate paragraphs 1-16, referring to Lilly's own documentation of the infringing Taltz antibody and its binding properties. (Compl.¶¶ 1-18.) These paragraphs demonstrate that by Lilly's own admission, Taltz falls squarely within the scope of Genentech's patent. That documentation, and not the alleged settlement discussions, is the "evidence of infringement" to which paragraph 43 refers.

Accordingly, paragraphs 42 and 43 do not reference protected settlement negotiations, and should therefore not be stricken from the Complaint.

### B. Even Without Information Learned from Alleged Settlement Discussions, Genentech Has Pleaded Sufficient Facts to Establish a Plausible Claim for Willfulness

In *Halo Electronics, Inc. v. Pulse Electronics., Inc.*, the Supreme Court lowered the burden of proof from clear and convincing evidence to a preponderance of the evidence and eliminated the separate objective reasonableness prong of the inquiry. 136 S. Ct. 1923, 1933-34 (2016). Since *Halo*, courts have evaluated the sufficiency of willfulness pleadings in several cases. For example, in *Finjan, Inc. v. SonicWall*, Inc., the court denied defendant's motion to dismiss the willfulness claim, holding that knowledge of the patent and evidence of numerous communications regarding the detailed basis of infringement was sufficient to state a claim that is plausible on its face. 2018 WL 2234370, at *3. Similarly, this Court denied a motion to dismiss willfulness allegations where the complaint merely alleged pre-suit notice of infringement contentions and continued sale of allegedly infringing product. *Finjan, Inc. v. ESET, LLC*, No. 3:17-cv-0183-CAB-(BGS), 2017 WL 1063475, at *4 (S.D. Cal. Mar. 21, 2017).

Genentech's Complaint plainly meets this standard, even without reliance on the allegations to which Lilly is objecting. Paragraphs 42 and 43 are shown below, with the portions Lilly alleges were derived from settlement discussions stricken:

> 42. ~~On June 27, 2018, Genentech notified Lilly that the '654 patent would issue on July 3, 2018, and offered Lilly a license at a royalty rate to be determined by arbitration. Lilly rejected the offer.~~
>
> 43. After the '654 patent issued on July 3, 2018, Lilly continued manufacturing, using, offering for sale, marketing, promoting, and/or selling Taltz. Lilly knows of the '654 patent, Genentech's infringement allegations, and ~~the evidence of infringement represented by its own admissions~~. Thus, any manufacture, use, import, offer for sale, and/or sale of Taltz after July 3, 2018, is willful.

(Compl. ¶¶ 42-43 (information purportedly derived from settlement discussions stricken in red).) As shown above, even without the stricken language, the Complaint alleges that Lilly has actual knowledge of the '654 patent and of Genentech's infringement allegations and, despite that knowledge, continues to manufacture, use, offer for sale, market, promote, and/or sell Taltz.[5] Lilly's admissions during venue discovery that it has promoted, marketed, offered to sell, and sold Taltz, provide further support for these allegations. (Chang Decl., Ex. 3 at Resps. to Reqs. for Admis. Nos. 2-4 and 7.) Consistent with the cases discussed above, these facts are sufficient to establish a plausible claim for willful patent infringement at the pleading stage.

## IV.   CONCLUSION

The Court should deny Lilly's motion to dismiss for improper venue. Venue

---

[5] Lilly fails to point out that its knowledge of the patent was not gained merely from the June 27, 2018 email, but that it had actual knowledge of the patent and Genentech's infringement allegations less than a week later, when Genentech served its original Complaint. *See Simplivity Corp. v. Springpath, Inc.*, No. 4:15-13345-TSH, 2016 WL 5388951, at *18 (D. Mass. July 15, 2016) (post-Complaint conduct alleged in amended Complaint deemed sufficient to support willful infringement claim); *Huawei Techs. Co. v. T-Mobile US, Inc.*, No. 2:16-CV-00052-JRG-RSP, 2017 U.S. Dist. LEXIS 43240, at *24-*25 (E.D. Tex. Feb. 21, 2017) (allegations of post-suit knowledge of patents deemed sufficient to support a claim of willfulness).

is proper in this District because Lilly has both committed acts of infringement in this District and has a regular and established place of business in the District and Lilly's proposed "nexus" requirement finds no support in the statute or the case law.

The Court should also deny Lilly's attempt to dismiss or strike Genentech's willful infringement claim. The challenged portions of paragraphs 42 and 43 should not be stricken from the Complaint. If nonetheless the Court grants Lilly's motion to strike Genentech's willfulness allegation, the Court should grant Genentech leave to amend.

Dated:   May 20, 2019    MORRISON & FOERSTER LLP

By: *s/ Michael A. Jacobs*
MICHAEL A. JACOBS

Attorneys for Plaintiff
GENENTECH, INC.

Email: MJacobs@mofo.com